**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

| | | |
|---|---|---|
| *Tamera L. Fine* | *Suite 400* | *DIRECT: 410-209-4806* |
| *Assistant United States Attorney* | *36 S. Charles Street* | *MAIN: 410-209-4800* |
| *Tamera.Fine@usdoj.gov* | *Baltimore, MD 21201-3119* | *FAX: 410-962-0716* |

July 29, 2014

Gary Allen Ticknor, Esquire
Law Offices of Gary Allen Ticknor
10630 Little Patuxent Parkway Suite 146
Columbia, MD 21044

Re:    Plea Agreement in the Case of
       United States v. Robert Johnson
       Criminal No. GLR-14-225

Dear Mr. Ticknor:

This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by Robert Johnson by August 18, 2014, it will be deemed withdrawn. The terms of the agreement are as follows:

<u>Offense of Conviction</u>

1.      The Defendant agrees to plead guilty to Counts One and Three of the Indictment now pending against him, which charge him with Wire Fraud Conspiracy Count One, in violation of 18 U.S.C. §1343 and with Aggravated Identity Theft Count Three, in violation of 18 U.S.C. §1028A. The Defendant admits that he is, in fact, guilty of those offenses and will so advise the Court.

<u>Elements of the Offense</u>

2.      The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

Wire Fraud Conspiracy

   a.   Between July 11, 2013 and August 2, 2013, in the District of Maryland, there was a conspiracy to commit wire fraud, that is, a scheme or artifice to defraud by means of false or fraudulent pretenses, representations or promises;

   b.   The Defendant knowingly joined the conspiracy;

1

    c. For the purpose of executing or attempting to execute the scheme, one or more of the participants transmitted or caused the transmission of data by means or wire communication; and

    d. Such wire communication was in or affecting interstate or foreign commerce.

Aggravated Identity Theft

    a. On or about July 11,2013, in the district of Maryland, Defendant knowingly transferred, possessed, or used the means of identification of another person (including knowing that the means of identification belonged to another person);

    b. The Defendant did not have legal authority to use transfer, use or possess the means of identification; and

    c. The Defendant transferred, possessed or used the means of identification during and in relation to a felony violation set forth in 18 U.S.C. §1028A, specifically the Conspiracy to Commit Wire Fraud set forth in Count One of the Indictment.

## Penalties

3. The maximum sentence provided by statute for the offenses to which the Defendant is pleading guilty is as follows: for Wire Fraud Conspiracy (Count One), 20 years period of incarceration, five years of supervised release and a $250,000.00 fine; for Aggravated Identity Theft (Count Three), two years mandatory consecutive period of incarceration, one year supervised release, and a $250,000.00 fine. In addition, the Defendant must pay $200.00 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664. If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

## Waiver of Rights

4. The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

    a. If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b.      If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community.  Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily.  All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count.  The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c.      If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt.  The Defendant would have the right to confront and cross-examine the government's witnesses.  The Defendant would not have to present any defense witnesses or evidence whatsoever.  If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

d.      The Defendant would have the right to testify in his own defense if he so chose and he would have the right to refuse to testify.  If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

e.      If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him.  By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

f.      By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence.  By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case.  Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

g.      If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

h.      By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The Defendant recognizes that if he is not a citizen of the United States, pleading guilty may have consequences with respect to his immigration status.  Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States.  Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant

3

understands that no one, including his attorney or the Court, can predict with certainty the effect of a conviction on immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any potential immigration consequences.

Advisory Sentencing Guidelines Apply

5.     The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

Factual and Advisory Guidelines Stipulation

6.     This Office and the Defendant understand, agree and stipulate to the Statement of Facts set forth in Attachment A hereto, which this Office would prove beyond a reasonable doubt, and to the following applicable sentencing guidelines factors:

a.     The base offense level for Count One is seven (7) under U.S.S.G. §2B1.1(a)(1).

b.     Because the intended loss during the period of time the Defendant was involved in the conspiracy was more than  $70,000 but less than $120,000,  an additional eight (8) levels must be added under U.S.S.G. § 2B1.1(b)(1)(E).

c.     This Office does not oppose a two level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct.  Because the adjusted offense level before acceptance of responsibility is less than 16, there is no additional decrease under U.S.S.G. § 3E1.1(b).  This Office may oppose any adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty.

d.     Defendant's adjusted guidelines level for Count One is 13, except as noted in paragraph 8 below.

e.     Pursuant to U.S.S.G. § 2B1.6(a), an additional 24 months of imprisonment must be imposed for Count Three, to run consecutively to the sentence imposed on Count One.

7.     The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a

4

career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

8. The Defendant reserves the right to argue that he is entitled to a minor role departure. Apart from this reservation, this Office and the Defendant agree that with respect to the calculation of the advisory guidelines range, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines will be raised or are in dispute.

## Obligations of the United States Attorney's Office

9. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

10. The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct, including the conduct that is the subject of the counts of the Indictment that this Office has agreed to dismiss at sentencing.

## Restitution

11. The Defendant agrees to the entry of a Restitution Order for the full amount of the victims' actual losses with regard to the identities compromised during the time the Defendant was participating in the scheme. The Defendant agrees that, pursuant to 18 U.S.C. §§ 3663, 3663A, 3563(b)(2) and 3583(d), the Court may order restitution of the full amount of the actual, total loss caused by the offense conduct set forth in the factual stipulation. The Defendant further agrees that he will fully disclose to the probation officer and to the Court, subject to the penalty of perjury, all information, including but not limited to copies of all relevant bank and financial records, regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this plea agreement, and this Office may seek to be relieved of its obligations under this agreement.

## Collection of Financial Obligations

12. The Defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report in order to evaluate the Defendant's ability to satisfy any financial obligation imposed by the Court.

13. In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the Defendant agrees to disclose fully all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party.

14.     The Defendant will promptly submit a completed financial statement to the United States Attorney's Office, in a form this Office prescribes and as it directs. The Defendant promises that the financial statement and disclosures will be complete, accurate and truthful, and understands that any willful falsehood on the financial statement will be a separate crime and may be punished under 18 U.S.C. § 1001 by an additional five years' incarceration and fine.

## Waiver of Appeal

15.     In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

a.     The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction.

b.     The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows: (i) the Defendant reserves the right to appeal any term of imprisonment to the extent that it exceeds the sentencing range set forth in guidelines level 13, plus 24 months consecutive for Count Three;  and (ii) this Office reserves the right to appeal any term of imprisonment to the extent that it is below the sentencing range set forth in guidelines level 13, plus 24 months consecutive for Count Three.

c.     Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

d.     The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Obstruction or Other Violations of Law

16.     The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case.  In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, (iii) moves to withdraw his guilty plea or (iv) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement.  Specifically, this Office will be free

to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

## Court Not a Party

17.     The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court. In particular, the Defendant understands that neither the United States Probation Office nor the Court is bound by the stipulation set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. The Defendant understands that the Court cannot rely exclusively upon the stipulation in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information. The Defendant understands that the Court is under no obligation to accept this Office's recommendations, and the Court has the power to impose a sentence up to and including the statutory maximum stated above. The Defendant understands that if the Court ascertains factors different from those contained in the stipulation set forth above, or if the Court should impose any sentence up to the maximum established by statute, the Defendant cannot, for that reason alone, withdraw his guilty plea, and will remain bound to fulfill all of his obligations under this agreement. The Defendant understands that neither the prosecutor, his counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

## Entire Agreement

18.     This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: _____
Tamera L. Fine
Assistant United States Attorney

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

9/18/14
_____
Date

_____
Robert Johnson

I am Robert Johnson's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

9/18/2014
_____
Date

_____
Gary Allen Ticknor, Esquire

8

Attachment A
Factual Stipulation

*If this matter had proceeded to trial, the government would have proven the following beyond a reasonable doubt.  The Defendant agrees that the following facts do not encompass all of the facts that would have been proven had this matter proceeded to trial.*

1.      From on or about July 11, 2013 through on or about August 2, 2013, in the State of Maryland, Robert Johnson (the "Defendant") conspired and agreed together with his co-defendant Denita Hill to execute a scheme and artifice to defraud the City of Baltimore, by using personal identity information to cause the City of Baltimore to issue duplicate checks  for lump sum payments to former city employees and to endorse those checks to the Defendant for him to cash and use for his own purposes and to benefit Ms. Hill.

2.      The Defendant and Ms. Hill were friends.  The Defendant worked for the Veterans Administration.  Ms. Hill worked as an accountant in the Finance Department of the City of Baltimore.  Ms. Hill often commented about how easy it would be for her to issue checks and steal from the City.  The two decided to see if they could do so, and formulated a plan.

3.      During the period in question, all employees who left the employment of the City of Baltimore were entitled to a lump sum check of any pay and benefits for which they qualified.  To distribute these funds the City of Baltimore used a payroll processing system provided by Automated Data Processing ("ADP").  Issuance of a check required the accessing of ADP's operations using data stored on servers in Michigan.  Checks could be printed remotely and mailed from the ADP Production and Service Center in Alpharetta, Georgia, or could be printed at the Baltimore City Finance Office.

4.      In her position with the City of Baltimore, Hill had responsibility for properly documenting lost lump sum payments and reissuing payment to individuals who had not received their payments.  Hill identified individuals who had received and cashed large lump sum payments through ADP, and requested that such checks be reissued as though the payments had never been received, when in fact the original check had been received and cashed by the intended recipient.  She requested that the check be printed at the Baltimore City Finance Office, where she then stole the check.

5.      Hill delivered these checks to the Defendant, endorsed "Pay to the Order of Robert Johnson."  The Defendant then deposited the checks bearing the fraudulent endorsement of the intended payee into his own bank account and used the funds for his own purposes or to fund meals and other purchases for the benefit of Hill.  In addition, Hill, who was seeking to purchase a house, repeatedly remarked that Mr. Johnson would have to pay her down payment.  Indeed, the two exchanged emails from their work computers which included both items to purchase and real estate listings.

6.      For example, on July 11, 2013, the Defendant deposited a check made out to Victim 1 in the amount of $14,741.09 and fraudulently endorsed to the Defendant with a forged signature of Victim 1.  On July 31, 2013, the Defendant deposited a check made out to Victim 2

in the amount of $58,485.91 and fraudulently endorsed to the Defendant with a forged signature of Victim 2. Both Victim 1 and Victim 2 had received and cashed their initial lump sum payment checks, and neither had consented to the use of their identity information to obtain duplicate checks or to endorse the checks over to the Defendant.

7.     The Defendant attempted to wire some of the funds to pay off another account in a different financial institution. His bank was alerted to the suspicious transaction pattern in a relatively new account and discovered that the account had been funded by two third party endorsed checks from individuals who appeared to be unrelated to the defendant. The bank referred the matter to the City of Baltimore Office of the Inspector General, who sought the assistance of the Finance Department in determining the authenticity of the endorsements. Hill was tasked with the investigation, and notified the Defendant of the problem. Hill attempted to derail the investigation and obtain release of the funds by the bank by claiming to have spoken to the third-party endorsers and reporting that they confirmed their endorsements, when in fact she had done neither. Eventually, her deception was discovered.

8.     Meanwhile, the Defendant's bank had reversed the deposits and returned the funds to the City of Baltimore, leaving the Defendant with a substantial negative balance in his account. He obtained funds from Hill to repay the amount due.

9.     During the course of the conspiracy, the Defendant and Hill obtained over $70,000 but less than $120,000, all of which was ultimately recovered.

I have read this Factual Stipulation and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. It accurately reflects what I did and what the government could prove I did. I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

9-18-14
_____
Date

Robert Johnson
_____
Robert Johnson

I am Robert Johnson's attorney. I have carefully reviewed every part of this Factual Stipulation, with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

9/18/2014
_____
Date

_____
Gary Allen Ticknor, Esquire